1

2

3

4

5                    UNITED STATES DISTRICT COURT

6              FOR THE EASTERN DISTRICT OF CALIFORNIA

7

PATRICK OSEI,

8
                                    NO. CIV. S-09-1981 LKK/JFM
9          Plaintiff,

10     v.

11 COUNTRYWIDE HOME LOANS;
   LENDING 1st MORTGAGE;
12 MORTGAGE ELECTRONIC
   REGISTRATION SYSTEMS, INC.;        O R D E R
13 DELTA MORTGAGE & REAL
   ESTATE; JEFFREY ALAN
14 PELLETIER; JEFFREY PAUL
   OLSON; JEFF BRYAN DELORA;
15 and DOES1-20, inclusive,

16
           Defendants.
17 _____/

18      This case concerns plaintiff's mortgage and foreclosure

19 thereon. Plaintiff's First Amended Complaint ("FAC") names seven

20 defendants and enumerates nine causes of action. Defendants

21 Countrywide Home Loans, Inc. ("CHL") and Mortgage Electronic

22 Registration Systems ("MERS") moved to dismiss all claims against

23 them and moved to strike portions of the FAC. Defendants Pelletier

24 Finance, Inc. dba Delta Mortgage and Real Estate ("Delta"), Jeffrey

25 Allen Pelletier ("Pelletier"), and Jeffrey Paul Olson ("Olson")

26 moved to dismiss all but two claims against them, or in the

                                1

1  alternative, for a more definite statement. For the reasons stated
2  below, the motions to dismiss are granted in part.

3                        **I. BACKGROUND**

4      Defendants CHL and MERS moved to dismiss and to strike on
5  September 28, 2009; defendants Delta, Pelletier, and Olson moved
6  to dismiss on September 25, 2009. Plaintiff filed oppositions to
7  both motions on October 27, 2009 and October 23, 2009,
8  respectively. Hearings were vacated for all motions.

9  **A.    Initial Loan[1]**

10     Plaintiff alleges that on or about August 24, 2006, Jeff Bryan
11 Delora ("Delora"), an employee of defendant Delta, solicited
12 plaintiff Patrick Osei ("Plaintiff" or "Osei") to refinance his
13 home. FAC ¶¶ 13, 23. Delora offered plaintiff a fixed rate loan
14 with a low interest rate and no prepayment rider. Id. at ¶ 26.
15 Plaintiff claims that he was told his mortgage payment would be
16 $1,274.39. Id. Plaintiff was advised that if the loan ever became
17 unaffordable, defendants would refinance it to an affordable loan.
18 Id. at ¶ 28. Plaintiff alleges that he was not provided with copies
19 of loan documents prior to closing, and at closing was only given
20 a few minutes to sign the documents. Id. at ¶ 29. Plaintiff claims
21 to have received no required copies of a proper notice of
22 cancellation. Id. The loan was finalized on November 24, 2006. Id.
23 at ¶ 31.

24 _____

25      [1] These facts are taken from the allegations in the FAC unless
   otherwise specified. The allegations are taken as true for purposes
26 of this motion only.

Plaintiff claims that contrary to Delora's representations he was sold an adjustable rate loan, negatively amoritizing, with a large prepayment rider. Id. at ¶ 26. Plaintiff's payments were initially $1,2734.39, but later increased to $3,048.73. Id. Plaintiff contends that Delora inflated his income on his loan application, without plaintiff's knowledge, by $7,640. Id. at ¶ 27. Plaintiff alleges that defendant Lending 1st Mortgage ("Lending") paid their employees commissions based on the volume of loans they sold to consumers. Id. at ¶ 35. Further, plaintiff alleges that Lending's loan officers received greater commissions or bonuses for placing borrowers in loans with high yield spread premiums. Id. According to the plaintiff, this resulted in borrowers being steered by Lending into loans with unfavorable terms and for which they were not qualified. Id. The deed of trust for plaintiff's mortgage lists defendant Mortgage Electronic Registration Systems ("MERS") as nominee for the lender and the lender's successors and assigns. It also indicates that MERS is the beneficiary under the instrument. Lending 1st Mortgage is listed as the lender.

**B.   Foreclosure of Plaintiff's Home Loan**

It is not clear from the face of plaintiff's FAC when, or how, foreclosure was brought against the plaintiff. Plaintiff contends that MERS is not in possession of the promissory note for plaintiff's mortgage, and does not have the right to payment under the note. FAC ¶¶ 34, 37.

On or about May 28, 2009, plaintiff sent a Qualified Written Request ("QWR") to defendant CHL, which included a demand for

1   rescission of the loan under TILA. <u>Id.</u> at ¶ 33. Plaintiff alleges

2   that CHL did not properly responded to the request. <u>Id.</u>

3       Plaintiff filed his first complaint on June 17, 2009, and

4   filed the amended complaint at issue here on September 11, 2009.

5                              **II. STANDARD**

6   **A.   Standard for a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss**

7       A Fed. R. Civ. P. 12(b)(6) motion challenges a complaint's

8   compliance with the pleading requirements provided by the Federal

9   Rules. In general, these requirements are established by Fed. R.

10  Civ. P. 8, although claims that "sound[] in" fraud or mistake must

11  meet the requirements provided by Fed. R. Civ. P. 9(b). <u>Vess v.</u>

12  <u>Ciba-Geigy Corp.</u>, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

13      **1.   Dismissal of Claims Governed by Fed. R. Civ. P. 8**

14      Under Federal Rule of Civil Procedure 8(a)(2), a pleading must

15  contain a "short and plain statement of the claim showing that the

16  pleader is entitled to relief." The complaint must give defendant

17  "fair notice of what the claim is and the grounds upon which it

18  rests." <u>Twombly</u>, 550 U.S. at 555 (internal quotation and

19  modification omitted).

20      To meet this requirement, the complaint must be supported by

21  factual allegations. <u>Iqbal</u>, 129 S. Ct. at 1950. "While legal

22  conclusions can provide the framework of a complaint," neither

23  legal conclusions nor conclusory statements are themselves

24  sufficient, and such statements are not entitled to a presumption

25  of truth. <u>Id.</u> at 1949-50. <u>Iqbal</u> and <u>Twombly</u> therefore proscribe a

26  two step process for evaluation of motions to dismiss. The court

                                      4

first identifies the non-conclusory factual allegations, and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." Id.; Erickson v. Pardus, 551 U.S. 89 (2007).

"Plausibility," as it is used in Twombly and Iqbal, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557). A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

The line between non-conclusory and conclusory allegations is not always clear. Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). While Twombly was not the first case that directed the district courts to disregard "conclusory" allegations, the court turns to Iqbal and Twombly for indications of the Supreme Court's current understanding of the

1  term. In Twombly, the Court found the naked allegation that

2  "defendants 'ha[d] entered into a contract, combination or

3  conspiracy to prevent competitive entry . . . and ha[d] agreed not

4  to compete with one another,'" absent any supporting allegation of

5  underlying details, to be a conclusory statement of the elements

6  of an anti-trust claim. Id. at 1950 (quoting Twombly, 550 U.S. at

7  551). In contrast, the Twombly plaintiffs' allegations of "parallel

8  conduct" were not conclusory, because plaintiffs had alleged

9  specific acts argued to constitute parallel conduct. Twombly, 550

10  U.S. at 550-51, 556.

11      Twombly also illustrated the second, "plausibility" step of

12  the analysis by providing an example of a complaint that failed and

13  a complaint that satisfied this step. The complaint at issue in

14  Twombly failed. While the Twombly plaintiffs' allegations regarding

15  parallel conduct were non-conclusory, they failed to support a

16  plausible claim. Id. at 566. Because parallel conduct was said to

17  be ordinarily expected to arise without a prohibited agreement, an

18  allegation of parallel conduct was insufficient to support the

19  inference that a prohibited agreement existed. Id. Absent such an

20  agreement, plaintiffs were not entitled to relief. Id.

21      In contrast, Twombly held that the model pleading for

22  negligence demonstrated the type of pleading that satisfies Rule

23  8. Id. at 565 n.10. This form provides "On June 1, 1936, in a

24  public highway called Boylston Street in Boston, Massachusetts,

25  defendant negligently drove a motor vehicle against plaintiff who

26  was then crossing said highway." Form 9, Complaint for Negligence,

1   Forms App., Fed. Rules Civ. Proc., 28 U.S.C. App., p 829. These
2   allegations adequately "'state[] . . . circumstances, occurrences,
3   and events in support of the claim presented.'" <u>Twombly</u>, 550 U.S.
4   at 556 n.3 (quoting 5 C. Wright & A. Miller, Federal Practice and
5   Procedure § 1216, at 94, 95 (3d ed. 2004)). The factual allegations
6   that defendant drove at a certain time and hit plaintiff render
7   plausible the conclusion that defendant drove negligently.

8        **2.   Dismissal of Claims Governed by Fed. R. Civ. P. 9(b)**

9        A Rule 12(b)(6) motion to dismiss may also challenge a
10  complaint's compliance with Fed. R. Civ. P. 9(b). See Vess, 317
11  F.3d at 1107. This rule provides that "In alleging fraud or
12  mistake, a party must state with particularity the circumstances
13  constituting fraud or mistake. Malice, intent, knowledge, and other
14  conditions of a person's mind may be alleged generally." These
15  circumstances include the "time, place, and specific content of the
16  false representations as well as the identities of the parties to
17  the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th
18  Cir. 2007) (quoting Edwards v. Marin Park, Inc., 356 F.3d 1058,
19  1066 (9th Cir. 2004)). "In the context of a fraud suit involving
20  multiple defendants, a plaintiff must, at a minimum, 'identif[y]
21  the role of [each] defendant[] in the alleged fraudulent scheme.'"
22  Id. at 765 (quoting Moore v. Kayport Package Express, 885 F.2d 531,
23  541 (9th Cir. 1989)). Claims subject to Rule 9(b) must also satisfy
24  the ordinary requirements of Rule 8.
25  ////
26  ////

7

1    **B.    Standard for a Fed. R. Civ. P. 12(e) Motion for More**
2    **Definite Statement**

3         "If a pleading to which a responsive pleading is permitted is

4    so vague or ambiguous that a party cannot reasonably be required

5    to frame a responsive pleading, the party may move for a more

6    definite statement before interposing a responsive pleading." Fed.

7    R. Civ. P. 12(e). "The situations in which a Rule 12(e) motion is

8    appropriate are very limited." 5A Wright and Miller, Federal

9    Practice and Procedure § 1377 (1990). Furthermore, absent special

10   circumstances, a Rule 12(e) motion cannot be used to require the

11   pleader to set forth "the statutory or constitutional basis for his

12   claim, only the facts underlying it." <u>McCalden v. California</u>

13   <u>Library Ass'n</u>, 955 F.2d 1214, 1223 (9th Cir. 1990). However, "even

14   though a complaint is not defective for failure to designate the

15   statute or other provision of law violated, the judge may in his

16   discretion . . . require such detail as may be appropriate in the

17   particular case." <u>McHenry v. Renne</u>, 84 F.3d 1172, 1179 (9th Cir.

18   1996).

19   **C.    Standard for a Fed. R. Civ. P. 12(f) Motion to Strike**

20        Rule 12(f) authorizes the court to order stricken from any

21   pleading "any redundant, immaterial, impertinent, or scandalous

22   matter." A party may bring on a motion to strike within 20 days

23   after the filing of the pleading under attack. The court, however,

24   may make appropriate orders to strike under the rule at any time

25   on its own initiative. Thus, the court may consider and grant an

26   untimely motion to strike where it seems proper to do so. <u>See</u> 5A

1 Wright and Miller, <u>Federal Practice and Procedure</u>: Civil 2d § 1380.

2     Motions to strike are generally viewed with disfavor, and will
3 usually be denied unless the allegations in the pleading have no
4 possible relation to the controversy, and may cause prejudice to
5 one of the parties. See 5A C. Wright & A. Miller, Federal Practice
6 and Procedure: Civil 2d 1380; See also Hanna v. Lane, 610 F. Supp.
7 32, 34 (N.D. Ill. 1985). If the court is in doubt as to whether the
8 challenged matter may raise an issue of fact or law, the motion to
9 strike should be denied, leaving an assessment of the sufficiency
10 of the allegations for adjudication on the merits. See 5A Wright
11 & Miller, supra, at § 1380.

12 <center>**III. ANALYSIS**</center>

13   The present motions concern all five claims against CHL: (1)
14 violation of the Rosenthal Fair Debt Collection Procedures Act
15 ("Rosenthal Act"), (2) negligence, (3) violation of the Real Estate
16 Settlement Procedures Act ("RESPA"), (4) fraud, and (5) violation
17 of the Unfair Competition Law ("UCL"); all three claims against
18 MERS: (1) negligence, (2) fraud, and (3) violation of the UCL; one
19 of three claims against Delta: (1) negligence; and three of the
20 five claims against Pelletier and Olson: (1) negligence, (2) breach
21 of contract, and (3) breach of the covenant of good faith and fair
22 dealing.

23 **A.    Rosenthal Fair Debt Collection Practices Act**

24     California's Rosenthal Fair Debt Collection Practices Act
25 ("Rosenthal Act") prohibits creditors and debt collectors from,
26 among other acts, making false, deceptive, or misleading

<center>9</center>

representations in an effort to collect a debt. Cal. Civ. Code §
1788, et seq. A "debt collector" is "any person who, in the
ordinary course of business, regularly, on behalf of himself or
herself or others, engages in debt collection." Cal. Civ. Code §
1788.2(c); see also Izenberg v. ETS Services, LLC, 589 F. Supp. 2d
1193, 1199 (C.D. Cal. 2008). Plaintiff's allegations that defendant
CHL violated the Rosenthal Act are the following:

    1.   CHL threatened to collect a debt not owed to it. FAC ¶
        68. The court assumes the debt was not owed to CHL
        because of the allegations of illegality in the
        origination of plaintiff's loan.

    2.   CHL made false reports to credit reporting agencies. Id.

    3.   CHL wrongly increased the amount of plaintiff's debt by
        including amounts not permitted by law or contract. Id.

    4.   CHL falsely stated the amount of plaintiff's debt. Id.

    5.   CHL used unfair and unconscionable means to collect the
        debt from plaintiff. Id.

Allegation number one is not relevant to a claim under the
Rosenthal Act because it fails to describe false, deceptive, or
misleading representations. Specifically, allegations of illegality
in the origination of a loan do not constitute representations in
the collection of a debt. Allegation number five is conclusory, in
that plaintiff does not specify what the alleged unfair or
unconscionable means were. Accordingly, the court cannot consider
this allegation when evaluating whether plaintiff stated a claim
under the Act. See Twombly, 550 U.S. 544 (2007).

1    The court will separately address the remaining allegations

2  because each presents a separate theory of liability. Plaintiff's

3  second allegation is that CHL threatened to make false reports to

4  credit agencies. FAC ¶ 68. The Rosenthal Act does not explicitly

5  proscribe such behavior, but does, however, explicitly incorporate

6  federal law, Cal. Civ. Code § 1788.17, and the federal Fair Debt

7  Collection  and  Practices  Act  prohibits  "[c]ommunicating  or

8  threatening to communicate to any person credit information which

9  is known or which should be known to be false" 15 U.S.C § 1692e(8).

10 Plaintiff's allegation satisfies the requirement of Rule 8 by

11 identifying the circumstances and events of the challenged conduct.

12 Moreover, the allegation need not meet Rule 9(b)'s heightened

13 pleading standard. 9(b) does not apply because this theory does not

14 "sound[ ] in fraud." <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120,

15 1125-26  (9th  Cir.  2009).  Plaintiff  alleges  that  false

16 representation was threatened, not necessarily made and relied

17 upon, hence fraud is not the "basis of [the] claim," and Fed. R.

18 Civ. P. 9(b) does not apply. <u>Vess</u>, 317 F.3d at 1103-04.

19    Plaintiff's third allegation is that CHL wrongfully increased

20 the amount of debt by including amounts not permitted by law. FAC

21 ¶ 68. Section 1788.13(e) prohibits adding fees that may not be

22 lawfully added. This claim provides the minimal particularity

23 required by Rule 8.

24    Finally, CHL allegedly "threatened" to falsely state the

25 amount of Plaintiff's debt. FAC ¶ 68. Apart from threats made to

26 credit agencies, discussed above, plaintiff apparently means that

CHL falsely stated the debt to him. This allegation concerns particular false representations, thus sounds in fraud and is subject to Rule 9(b)'s heightened requirements. Although Plaintiff has alleged the content of the false representation and the identity of the parties (CHL), he has not alleged the time, place or manner of the misrepresentation with sufficient particularity. Accordingly plaintiff has not met the pleading requirements for his claim that CHL falsely stated the amount of debt.

Some, but not all, of plaintiff's theories of liability under the Rosenthal Act are sufficiently alleged. Defendant's motion is granted in part and denied in part as to Plaintiff's Rosenthal Act claim.

**B.   Negligence**

Plaintiff brings a claim for negligence against all moving defendants. Under California law, a claim of negligence requires "(a) a legal duty to use due care; (b) a breach of such legal duty; and (c) the breach as the proximate or legal cause of the resulting injury." <u>Ladd v. County of San Mateo</u>, 12 Cal. 4th 913, 917 (1996) (internal citations and quotations omitted); <u>see also</u> Cal Civ. Code § 1714(a). The court discuses the allegations of negligence as to each defendant separately.

**1.   CHL**

**a.   Lenders Duty of Care to Borrowers**

Plaintiff argues that he is owed a duty by CHL "to perform acts in such a manner as to not cause Plaintiff harm." FAC ¶ 75. CHL argues that, as a lender, it did not owe the Plaintiff a duty

12

1   of care. The court rejects defendant's argument that a lender never

2   owes a duty of care to a borrower. California courts have stated

3   that "as a general rule, a financial institution owes no duty of

4   care to a borrower when the institution's involvement in the loan

5   transaction does not exceed the scope of its conventional role as

6   a mere lender of money." Nymark v. Heart Fed. Savings & Loan Assn.,

7   231 Cal. App. 3d 1089, 1096 (1991). Applying this rule, the court

8   in Nymark granted summary judgment to the defendant on a claim that

9   the defendant lender had acted negligently in appraising the

10  borrower's collateral to determine if it is adequate security for

11  a loan refinancing the borrower's mortgage, as the court concluded

12  as a matter of law that no duty of care existed with respected to

13  the appraisal. Id. at 1096. See also Wagner v. Benson, 101 Cal.

14  App. 3d 27, 36 (1980) (a lender has no duty to ensure that a

15  borrower will use borrowed money wisely).

16      The court understands Nymark to be limited in two ways. First,

17  a lender may owe a duty of care sounding in negligence to a

18  borrower when the lender's activities exceed those of a

19  conventional lender. The Nymark court noted that the "complaint

20  does not allege nor does anything in the summary judgment papers

21  indicate, that the appraisal was intended to induce plaintiff to

22  enter into the loan transaction or to assure him that his

23  collateral was sound." Id. at 1096-97. Nymark thereby implied that

24  had such intent been present, the lender may have had a duty to

25  exercise due care in preparing the appraisal. See also Wagner v.

26  Benson, 101 Cal. App. 3d 27, 35 (1980) ("Liability to a borrower

13

1 for negligence arises only when the lender actively participates

2 in the financed enterprise beyond the domain of the usual money

3 lender.").

4      Second, even when a lender's acts are confined to their

5 traditional scope, Nymark announced only a "general" rule. Rather

6 than conclude that no duty existed per se, the Nymark court

7 determined whether a duty existed on the facts of that case by

8 applying the six-factor test established by the California Supreme

9 Court in Biakanja v. Irving 49 Ca. 2d 647, 320 P.2d 16 (1958).

10 Nymark, 231 Cal. App. 3d at 1098; see also Glenn K. Jacskon Inc.

11 v. Roe, 273 F.3d 1192, 1197 (9th Cir. 2001). This test balances six

12 non-exhaustive factors:

> [1] the extent to which the transaction was intended
> 13 to affect the plaintiff, [2] the foreseeability of
> harm to him, [3] the degree of certainty that the
> 14 plaintiff suffered injury, [4] the closeness of the
> connection between the defendant's conduct and the
> 15 injury suffered, [5] the moral blame attached to the
> defendant's conduct, and [6] the policy of preventing
> 16 future harm.

17

18 Roe, 273 F.3d at 1197 (quoting Biakanja, 49 Ca. 2d at

19 650(modification in Roe). Although Biakanja reasoned that this test

20 determines "whether in a specific case the defendant will be held

21 liable to a third person not in privity" with the defendant, 49

22 Cal. 2d. at 650, Nymark held that this test also determines

23 "whether a financial institution owes a duty of care to a

24 borrower-client" 231 Cal. App. 3d at 1098. Applying these factors

25 to the specific factors in that case, the Nymark court assumed that

26 plaintiff suffered an injury, but held that the remaining factors

all indicated against finding a duty of care. Id. at 1098-1100.

In Roe, the Ninth Circuit noted that the California Supreme Court arguably limited Biakanja in Bily v. Arthur Young & Co., 3 Cal. 4th 370 (1992), which held that a court must consider three additional factors before imposing a duty of care. Roe, 273 F.3d at 1198. Roe summarized these factors as "(1) liability may in particular cases be out of proportion to fault (2) parties should be encouraged to rely on their own ability to protect themselves through their own prudence, diligence and contracting power; and (3) the potential adverse impact on the class of defendants upon whom the duty is imposed." Id. (citing Bily, 3 Cal. 4th at 399-405). Bily was decided before Nymark, but not discussed therein.

### b.   Lender's Allegedly Negligent Acts

Both limitations to the Nymark rule require the court to consider the particular conduct underlying the negligence claim.[2] Plaintiff alleges five types of conduct on the part of CHL and MERS.

First, plaintiff alleges that CHL was negligent in failing to maintain the original promissory note, or to properly create original documents. FAC ¶ 75. Other than the allegations regarding disclosures, plaintiff has not identified any defect in the

---

[2]Although the court engages in this fact specific analysis, the court is mindful of fact that plaintiff has not provided a single example of a case in which a lender was found to owe a duty of care sounding in negligence to a borrower, nor has the court discovered any such authority under California law.

1   promissory note, deed of trust, or attached documents. As to
2   preservation of the original promissory note, plaintiff has not
3   alleged facts supporting the conclusion that any failure to
4   maintain this note caused any harm to plaintiff.

5       Plaintiff further argues that CHL failed to make required
6   disclosures. FAC ¶ 75. The only required disclosure relevant to
7   this claim is CHL's alleged violation of RESPA. Plaintiff has
8   alleged a plausible failure to make a required disclosure. CHL had
9   a duty of care with regard to RESPA disclosures. Although these
10  disclosures fall within the scope of the lender's normal
11  activities, each of the <u>Baikanja</u> factors support finding a duty of
12  care, and the policy concerns identified in <u>Bily</u> are inapplicable
13  here. Plaintiff has adequately alleged a duty to make RESPA
14  disclosures, a breach of that duty, and damages.

15      Plaintiff further alleges that CHL breached its duty of care
16  when it took payments and charged fees to which it was not
17  entitled, and authorized negative reporting regarding plaintiff's
18  creditworthiness. FAC ¶ 76. Defendant's duty as to these
19  allegations is limited by the terms of plaintiff's loan. Until the
20  terms of plaintiff's loan are deemed void, CHL's actions to enforce
21  those terms cannot violate any duty. As such, plaintiff has not
22  alleged a claim for negligence with respect to the collection of
23  payments, charging of fees, or reporting to credit bureaus. For the
24  foregoing reasons, defendant's motion to dismiss plaintiff's
25  negligence claim against it is granted in part and denied in part.
26  ////

1      **2.    MERS**

2      With the possible exception of failure to maintain the

3  original promissory note, plaintiff's negligence claim does not

4  allege any conduct plaintiff attributes to MERS. FAC ¶¶ 75, 76.

5  This court recently considered whether the original promissory note

6  need be maintained by MERS or any other entity seeking non-judicial

7  foreclosure in California. <u>Champlaie v. BAC Home Loans Servicing,</u>

8  <u>LP</u>, 2009 WL 3429622 at *13 (E.D. Cal. October 22, 2009).

9  Essentially, this court concluded that "California Civil Code

10 sections 2924-2924*l* establish an exhaustive set of requirements for

11 non-judicial foreclosure, and that production of the note is not

12 one of these requirements." <u>Id.</u> Thus, plaintiff has not alleged

13 that the failure to maintain the promissory note caused her any

14 cognizable harm.  Thus, MERS's motion to dismiss plaintiff's

15 negligence claim is granted.

16     **3.    Delta, Pelletier and Olson**

17          **a. Statute of Limitations**

18     Plaintiff alleges that Defendants Delta, Pelletier and Olson

19 owed him a duty "to perform acts as brokers of loans in such a

20 manner as to not cause Plaintiff harm" FAC ¶ 72. This duty was

21 allegedly breached when the defendants directed plaintiff into a

22 loan that plaintiff was not qualified to receive based on his

23 income and would not have qualified for by industry standards,

24 thereby resulting in excessive fees beyond the Plaintiff's ability

25 to pay. FAC ¶¶ 73-74.

26     Defendants argue that the negligence claim should be dismissed

because it was not timely filed. Under California law negligence claims have a two year statute of limitations. Cal. Civ. Proc. § 335.1. However, the statute of limitations begins running not when the allegedly negligent act or omission occurred, but rather "when the cause of action is complete with all of its elements." Norgart v. Upjohn Co., 21 Cal.4th 383, 389 (1999). Thus, with respect to negligence claims, the statute of limitations does not run until the plaintiff sustains an injury because "the mere breach of a . . . duty does not suffice to create a cause of action for negligence." Sahadi v. Scheaffer, 155 Cal. App. 4th 704, 715 (Cal. Ct. App. 2007) (citing (Budd v. Nixen, 6 Cal. 3d 195, 200 (1971).) Accordingly, the two year statute of limitations begins to run after both (1) all of the elements of the negligence claim are complete and (2) plaintiff knew or should have known of the claim. Norgart, 21 Cal. 4th at 397.

Here, plaintiff's allegations support a claim that he did not experience any injury, or know of his claim, until his loan payments exceeded his ability to pay. Though not pled with great specificity in the FAC, the court infers from ¶ 26 that plaintiff alleges he was unaware of the nature of the mortgage, or the occurrence of an injury based on the mortgage, until his adjustable rate loan increased from the initial monthly rate of $1,274.39. The mortgage payment adjusted based on a 12 month average of monthly average yields. Id. Plaintiff's cause of action for negligence was not complete until November of 2007. Accordingly, his claim falls within the limitations period and the defendant's motion to dismiss

18

1   is denied.

2   **C. Real Estate Settlement Procedures Act**

3        A QWR is a written request, from the borrower to the lender,

4   for either information relating to a federally regulated mortgage

5   loan, or an explanation of why the borrower believes the account

6   is in error. 12 U.S.C § 2605(e)(B)(ii). RESPA requires that lenders

7   respond to borrower's QWRs. 12 U.S.C. § 2605(e)(2). Plaintiff

8   argues that CHL violated RESPA by failing to provide a proper

9   written response to plaintiff's QWR which was mailed to CHL on or

10  about May 8, 2009. FAC ¶¶ 33, 83. Defendant CHL characterizes the

11  letter as a demand for recision that misses the definition of a QWR

12  under 12 U.S.C § 2605(e)(B)(ii). However, based on plaintiff's FAC,

13  the letter in question was a QWR that included a separate demand

14  for recision under TILA. FAC ¶ 33. Accordingly, plaintiff has plead

15  sufficient facts to support a claim for a violation of RESPA.[3]

16       RESPA also requires a loan servicer to "notify the borrower

17  in writing of any assignment, sale, or transfer of the servicing

18  of the loan to any other person." 12 U.S.C. § 2605(b)(1). Plaintiff

19  ───────────────

20       [3] Defendant CHL, in its Reply in Support of Motion to Dismiss
    abandons their argument that plaintiff's letter was not a QWR, and
21  instead claims that they provided a statutorily appropriate
    response when Bank of America sent plaintiff a letter dated July
22  17, 2009. Defendants attached this letter in a second request for
    judicial notice filed with their reply. RJN 2 Exhibit A. However,
23  this letter cannot be considered in this motion because it was only
    presented in the defendant's reply. Plaintiff had no opportunity
24  to argue that the QWR is not a proper response under 12 U.S.C. §
    2605(e)(2), or to challenge its authenticity under <u>Branch v.</u>
25  <u>Tunnell, 14 F.3d 449, 454 (9th Cir. 1994)</u> (courts may consider on
    a motion to dismiss "documents whose comments are alleged in a
26  complaint and whose authenticity no party questions, but which are
    not physically attached to the pleading").

1   is uncertain which defendant serviced the loan at any time, and

2   accordingly ascribes a failure to properly advise plaintiff

3   regarding the roles of the various entities involved in the loan

4   to all defendants, including CHL. FAC ¶ 81. Though it is not

5   immediately clear from plaintiff's FAC, plaintiff seems to contend

6   that CHL had a duty to notify the plaintiff when it acquired

7   servicing rights to his loan, and failed to do so. This claim is

8   pled with sufficient particularity to satisfy Rule 8. Accordingly,

9   Plaintiff has properly stated against CHL under RESPA.

10  **E. Fraud**

11      Plaintiff brings a claim for fraud against CHL and MERS.

12  Claims for fraud are subject to a heightened pleading requirement

13  under Fed. R. Civ. P. 9(b), as discussed above. Under California

14  law, the elements of fraud are (1) misrepresentation (a false

15  representation, concealment or nondisclosure), (2) knowledge of

16  falsity, (3) intent to defraud (to induce reliance), (4)

17  justifiable reliance and (5) resulting damages. Agosta v. Astor,

18  120 Cal. App. 4th 596, 603 (2004).

19      The plaintiff alleges that CHL's and MERS's involvement in the

20  loan at issue was material to the transaction, and that both

21  committed fraud when they failed to inform the Plaintiff of their

22  involvement. FAC ¶ 100. Plaintiff further alleges that CHL

23  misrepresented to Plaintiff that "CHL had the right to collect

24  monies from Plaintiff on its behalf or on behalf of others" FAC ¶

25  101. According to plaintiff, MERS "misrepresented to Plaintiff on

26  the deed of Trust that it is a qualified beneficiary with the

1   ability to assign or transfer the Deed of Trust and/or the Note

2   ad/or substitute trustee under the Deed of Trust" and

3   misrepresented that "it followed the applicable legal requirements

4   to transfer the note and Deed of Trust to subsequent beneficiaries"

5   FAC ¶ 102.

6        Plaintiff alleges the specific content of the false

7   representation, and the parties involved. These allegations,

8   however, fail to meet the pleading standard required by Fed. R.

9   Civ. P. 9(b) in that they do not identify the time or place of the

10  alleged representations.

11       Regarding the claim that MERS misrepresented its status on the

12  deed of trust, plaintiff has not pled a necessary element of fraud:

13  misrepresentation. The complaint contains no allegations that would

14  render plausible the argument that, notwithstanding the fact that

15  MERS is listed as a beneficiary on the deed of trust and that no

16  assignment has been made, MERS is not the beneficiary.

17       Further, plaintiff argues in her opposition that moving

18  defendants are somehow vicariously liable for the alleged

19  misrepresentations made by real estate broker defendants Delora,

20  Pelletier, and Olson. Plaintiff, however, fails to provide any

21  legal theory to support such liability based upon the facts alleged

22  in her complaint. As such, plaintiff has not stated a claim for

23  vicarious liability of any defendants. Plaintiff's allegations fail

24  to meet the specificity required by Rule 9(b).

25  **F. Breach of Contract**

26       Plaintiffs brings a claim for breach of contract against

21

1   Pelletier and Olson to which defendants move to dismiss. A cause
2   of action for breach of contract requires: (1) that a contract
3   exists between the parties, (2) that the plaintiff performed his
4   contractual duties or was excused from nonperformance, (3) that the
5   defendant breached those contractual duties, and (4) that
6   plaintiff's damages were a result from the breach. <u>Reichert v.</u>
7   <u>General Ins. Co.</u>, 68 Cal. 2d 822, 830 (1968); <u>First Commercial</u>
8   <u>Mortgage Co. v. Reece</u>, 89 Cal. App. 4th 731, 745 (2001).

9        Plaintiff alleges that he entered into "an agreement with with
10  Defendants . . . whereby Defendants promised to provide Plaintiff
11  with an affordable loan", and to refinance the loan if it became
12  unaffordable. FAC ¶ 117, 119. Inasmuch as these allegations
13  transcend the promissory note, the court treats them as a claim for
14  an oral contract. Defendants argue that plaintiff's breach of
15  contract claim is time barred.

16       The statute of limitations for a breach of oral contract is
17  two years. Cal. Code Civ. Proc. § 339. The statute of limitations
18  begins to run on oral contracts when the contract is breached, not
19  when the contract is formed. <u>Church v. Jamison</u>, 143 Cal. App. 4th
20  1568, 1582-1583 (2006); <u>see also</u> <u>Parker v. Walker</u>, 5 Cal. App. 4th
21  1173, 1189 (1992). When a breach of contract occurs in secret, and
22  is not reasonably discoverable until a later time, the discovery
23  date sets the beginning of the limitations period. <u>Gryczman v. 4550</u>
24  <u>Pico Partners, Ltd.,</u> 107 Cal.App.4th 1, 4-5 (Cal. App. 2 Dist.,
25  2003).

26       Here, plaintiff alleges a variety of breaches, including

1  failure to secure the promised payments and interests rates, and
2  failure to refinance the mortgage as promised. FAC ¶ 119. Contrary
3  to defendant's assertions, the breaches alleged by plaintiff, such
4  as the failure to refinance, occurred at least one year after the
5  closing of the loan on November 24, 2006, or were not discoverable
6  until the loan adjusted in November of 2007. Hence, the court finds
7  that the limitations period for this action began in November of
8  2007, and plaintiff's breach of contract claim is timely.

9  **G. UCL**

10      Plaintiff brings a cause of action against all defendants,
11  and defendants MERS and CHL move to dismiss. California's Unfair
12  Competition Law, Cal. Bus. & Prof. Code § 17200, ("UCL") proscribes
13  "unlawful, unfair or fraudulent" business acts and practices.
14  Plaintiff's allegations incorporate, by reference, the entire FAC,
15  but the sole allegation explicitly specifying a UCL violation is
16  that "[p]laintiff is informed and believes, that Defendant's acts,
17  as alleged herein, constitute unlawful, unfair, and/or fraudulent
18  business practices, as defined in the California Business and
19  Professions Code § 17200 et. seq." FAC ¶ 112. Plaintiff's
20  allegation sketches only the barest outline of an UCL claim and
21  directs defendants to scour the remainder of the complaint to
22  determine, which, if any, allegations incorporated by reference
23  plaintiff intend as the basis for this claim.

24      The incorporated allegations fail to state a UCL claim based
25  on fraudulent or unfair business practices. As to fraud, Fed. R.
26  Civ. P. 9(b) applies to UCL claims sounding in fraud, and plaintiff

23

has failed to meet ths standard. As to unfair business practices plaintiff fails to provide defendants with any notice as to which acts, if any, defendants are alleged to have done which constitute such practices.

Plaintiff's UCL claim must proceed, if at all, on the theory that defendants acted unlawfully. As discussed above, plaintiff has adequately alleged unlawful acts in that CHL may have violated RESPA and the Rosenthal Act and negligently failed to make disclosures under RESPA. These allegations identify predicate acts supporting a UCL claim. However, plaintiff has not adequately alleged any claims of unlawful activity against MERS, including negligence or fraud. Thus, CHL's and MERS's motion to dimiss plaintiff's UCL claim is granted as to defendant MERS and is denied as to defendant CHL insofar as plaintiff's claims derive from the theories described above.

**G. Breach of the Implied Covenant of Good Faith and Fair Dealing.**

Plaintiff brings a claim for breach of the implied covenant of good faith and fair dealing against Pelletier and Olson, who move to dismiss. Such a claim is predicated upon the existence of a contract. A claim for the breach of the duty of good faith is a claim that a defendant deprived plaintiff of benefits reasonably excepted by the parties under the contract; entry into a contract itself cannot constitute a violation of the duty of good faith.

Plaintiff does not indicate in his FAC whether the contract at issue was the promissory note, the alleged oral contract whereby Defendants promised to refinance the loan, or both. Plaintiff

24

1   alleges that defendants breached the duty of good faith and fair
2   dealing by "[f]ailing to pay at least as much regard to Plaintiffs'
3   interests as to Defendants' interests," "[f]ailing to disclose .
4   . . the true nature of the loan that is the subject of this
5   action," "[f]ailing to give Plaintiffs' the requisite notice and
6   disclosures," and "failing to comply with all applicable laws." FAC
7   ¶¶ 124-125.

8       Defendants argue that this claim should be dismissed as
9   untimely. A claim for the covenant of good faith and fair dealing
10  has a two year statute of limitations when it sounds in tort, and
11  four years if it sounds in contract. Love v. Fire Insurance
12  Exchange, 221 Cal. App. 3d. 1136, 1144 (1990). A good faith claim
13  sounds in tort only when there is a "special relationship" between
14  the contracting parties. See, e.g., Jonathan Neil & Assoc. v.
15  Jones, 33 Cal. 4th 917, 932 (2004).

16      Here, plaintiff does not identify whether his good fath and
17  fair dealing claim sounds in tort or contract. While plaintiff
18  makes some allegation which would suggest the claim sounds in tort,
19  e.g., suggesting a special relationship plaintiff and defendant,
20  such an argument is not supported by California law. Specially,
21  California courts have held that at least as between lenders and
22  commercial borrowers, there is ordinarily not a special
23  relationship giving rise to tortious bad faith liability. Kim v.
24  Sumitomo Bank, 17 Cal. App. 4th 974, 979 (1993) (citing Careau &
25  Co. v. Security Pacific Business Credit, Inc., 222 Cal. App. 3d
26  1371, 1399, n.25 (1990)).

1    Nonetheless, plaintiff may state a claim for a breach of the
2    implied covenant of good faith and fair dealing sounding in
3    contract. Because defendants have only moved to dismiss on statute
4    of limitation grounds, the court does not consider whether
5    plaintiff has started a claim for a breach of good faith and fair
6    dealing sounding in contract. Rather, the court acknowledges that
7    plaintiff has made allegations that do not depend on a special
8    relationship, and therefore sound in contract. These claims clearly
9    meet the 4 year statute of limitations requirement. Accordingly,
10   defendant's motion to dismiss plaintiff's breach of the covenant
11   of good faith and fair dealing claim is granted in so far as the
12   claim sounds in tort, and denied insofar as the claim sounds in
13   contract.

14   **E. Motion for a More Definite Statement**

15   Because the court grants plaintiff leave to amend his
16   complaint, defendants motion for a more definite statement is
17   denied.

18   **F. Motion to Strike**

19   Defendant MERS argues that plaintiff's allegations that MERS
20   was not registered to do business in California should be stricken
21   from the plaintiff's FAC. Defendants contends that plaintiff's
22   allegations stem solely from a typographical error. The court is
23   not persuaded, and the motion to strike is denied.

24   As to plaintiff's request for attorney fees, defendant argues
25   that the fees are not recoverable as a matter of law, and should
26   be stricken. At this point, the only fees that the court is

1  prepared to say are not recoverable as a matter of law are

2  plaintiff's specific request for attorneys fees under the UCL. FAC

3  ¶ 115. Attorney fees are not recoverable under the UCL. Cal-Tech

4  Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 179

5  (1999). Accordingly, the court strikes references to attorney fees

6  under UCL from the FAC.

7     As to the punitive damages, defendants argue that all of

8  plaintiff's allegations regarding oppression, fraud, or malice are

9  conclusory, hence plaintiff has not demonstrated he is entitled to

10  punitive damages. Mindful of the principle that motions to strike

11  are disfavored, and the fact that plaintiff will be granted leave

12  to amend his complaint, the court finds plaintiff's argument

13  inadequate.

14                    **IV.  CONCLUSION**

15     For the reasons stated above, the court GRANTS IN PART

16  Defendants; motions to dismiss plaintiff's first amended complaint,

17  Doc. Nos. 19, 21.

18     The court DISMISSES the following claims:

19         1.   Third Claim, for negligence, as to defendant MERS.

20         2.   Sixth Claim, for fraud, as to defendants MERS and

21              CHL.

22         3.   Seventh Claim, for violation of California's Unfair

23              Competition Law, as to defendant MERS.

24         4.   Ninth Claim, for violation of the implied covenant

25              of good faith and fair dealing, as to defendants

26              Pelletier and Olson, insofar as this claim sounds

1          in tort.

2      All dismissals are without prejudice. Plaintiff is granted

3  twenty one (21) days to file a second amended complaint. It appears

4  that the plaintiff may truthfully amend to cure defects on some of

5  his claims. However, plaintiff is cautioned not to re-plead

6  insufficient claims, or to falsely plead.

7      The court DENIES defendants' motions as to the following

8  claims, insofar as they are premised on the theories found adequate

9  in the analysis above:

10         1.    Second Claim, for violation of California's

11               Rosenthal Act, as to defendant CHL.

12         2.    Third Claim, for negligence, as to defendants CHL,

13               Delta, Pelletier, and Olson.

14         3.    Fourth Claim, for violation of RESPA, as to

15               defendant CHL.

16         4.    Seventh Claim, for violation of California's Unfair

17               Competition Law, as to defendant CHL.

18         5.    Eighth Claim, for breach of contract, as to

19               defendants Pelletier and Olson.

20         6.    Ninth Claim, for violation of the implied covenant

21               of good faith and fair dealing, as to defendants

22               Pelletier and Olson, insofar as this claim sounds

23               in contract.

24      IT IS SO ORDERED.

25      DATED:  March 2, 2010.

26
                                   LAWRENCE K. KARLTON
                                   SENIOR JUDGE
                                   UNITED STATES DISTRICT COURT